**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DELIVERMED HOLDINGS, LLC,** ) | Civil Action No. |
| an Illinois Limited Liability Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **MEDICATE PHARMACY, INC., MICHAEL** ) | |
| **SCHALTENBRAND, and JOE D. SIDDLE** ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR PRELIMINARY INJUNCTIVE**
**AND OTHER RELIEF**

NOW COMES the Plaintiff, DeliverMed Holdings, LLC, (hereinafter "DeliverMed"), by and through its attorney, James A. McGurk, of the Law Offices of James A. McGurk, P.C., and complains against the Defendants Medicate Pharmacy, Inc., Michael L. Schaltenbrand, and Joe D. Siddle, and hereby moves this Honorable Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an expedited hearing and the entry of a preliminary injunction to protect it from the substantial and irreparable injury it will sustain if Defendants are permitted to continue their unauthorized infringement of Plaintiffs' trademark "DeliverMed" (hereinafter "the Mark").

In support hereof, Plaintiff states as follows:

**NATURE AND STATUTORY BASIS OF ACTION**

1.   This is an action for unfair competition under the laws of the United States, as

provided for by Title 15 U.S.C. § 1125(a)(§ 43(a) of the Lanham Act; service mark infringement and unfair competition under the common law of the State of Illinois; dilution under the Illinois Anti-Dilution Law, 765 ILCS 1036/1, *et seq*., and the common law of the State of Illinois; consumer fraud under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq.;* deceptive trade practices under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.;* an accounting; and preliminary injunctive relief.

## THE PARTIES

2. Plaintiff is an Illinois Corporation duly organized and existing under and by virtue of the laws of the State of Illinois, having its principal place of business located at 220 Melrose Avenue, Kenilworth, Illinois 60043.

3. Defendant, Michael L. Schaltenbrand is an Illinois resident, and, upon Plaintiff's information and belief, the President and sole shareholder of Medicate Pharmacy, Inc., an Illinois Corporation duly organized and existing under and by virtue of the laws of the State of Illinois, with its principal place of business located at 1833 Kingshighway, Washington Park, Illinois 62204, and defendants are doing business in this judicial district.

4. Joe D. Siddle is an employee of Medicate Pharmacy, Inc. with offices in Washington Park, Illinois.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338(a) and (b) (patent, copyright, trademark and unfair competition jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction), as hereinafter more fully

appears.

6.      Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1391 (b) and (c), since, *inter alia,* the causes of action asserted arose from or are connected with the purposeful acts committed by defendants in this District.

## STATEMENT OF FACTS

7.      Plaintiff DeliverMed Holdings, LLC is an Illinois limited liability entity that was incorporated in 2005.

8.      Michael L. Schaltenbrand is the president of the corporation Medicate Pharmacy, Inc. Michael L. Schaltenbrand is an Illinois licensed pharmacist and sells prescription drugs in East St. Louis, Illinois, and Washington Park, Illinois.

9.      Mark Swift is the founder and President of DeliverMed Holdings, LLC, ("DeliverMed") an Illinois Limited Liability Company ("LLC").

10.     Swift formed DeliverMed as an Illinois LLC in 2005. He is the principal owner of DeliverMed Holdings, LLC and is its President. Swift previously had used the name DeliverMed since 2000 for predecessor businesses.

11.     DeliverMed is in the business of soliciting customers for pharmacies. Delivermed is not itself a pharmacy and does not directly serve any patients.

12.     In 2005, DeliverMed entered into an agreement with defendant Medicate Pharmacy, Inc. to solicit customers for Medicate Pharmacy, Inc. The offices for Medicate Pharmacy, Inc. are located in East St. Louis, IL and Washington Park, IL.

13. Under the agreement negotiated between Swift and Michael Schaltenbrand, the President and owner of Medicate Pharmacy, Inc., DeliverMed was to solicit mail order pharmacy patients. The customers were primarily patients who had prescriptions and were being served under the Medicare and Medicaid programs. That is, after a prescription was filled for a patient, a governmental entity, such as the State of Illinois, would be billed for the prescription.

14. The agreement between Delivermed and Medicate Pharmacy provided that Mark Swift was to receive 40% of the profit on all mail order prescriptions filled for patients that DeliverMed generated for Medicate Pharmacy, Inc.

15. During the time period from the fall of 2005 through 2009, DeliverMed generated very substantial increases in patients and profits for Medicate Pharmacy.

16. Because of the increase in the numbers of patients, in late 2007, Michael Schaltenbrand, President and owner of Medicate Pharmacy, Inc., proposed a new agreement under which the commissions paid to Swift would be reduced from 40% to 35% and he, Swift, would receive 35% of the stock in a new combined corporate entity to be created by merging DeliverMed's mail order prescription business and Medicate Pharmacy's retail pharmacy business.

17. The new entity was to be called either "DeliverMed - Illinois, LLC" or "DeliverMed Medicate Pharmacy." A copy of a refrigerator magnet and a medicine vial cap with the DeliverMed logo and the name "DeliverMed Medicate Pharmacy" is attached as Exhibit A. These were ordered by Michael L. Schaltenbrand from Tri-State Distribution Co. of Sparta, TN.

18. Starting on January 1, 2008, Swift's commissions were reduced to 35% on the profits generated by mail orders for patients referred to Medicate Pharmacy, Inc. by DeliverMed pursuant to the new agreement.

19. In furtherance of the agreement, Michael Schaltenbrand stated that he would prepare an operating agreement for the new LLC. Drafts of the proposed agreement were circulated to DeliverMed by counsel for Michael Schlatenbrand. Copies of the proposed agreement were also sent to Swift and to another employee of Medicate Pharmacy, Inc., defendant Joe D. Siddle.

20. The agreement to merge businesses was never put in final written form and signed by the parties.

21. As part of the agreement to merge businesses, DeliverMed was to transfer the name "DeliverMed," transfer the phrase known as a tag line, "Right at Home" and the logo of DeliverMed to Medicate Pharmacy, Inc. for use by the new entity.

22. As part of the agreement to merge businesses, DeliverMed was to deliver other assets, including a list of approximately 500,000 names of potential patients and intellectual property such programs for generating leads for patients.

23. Mark Swift never received any stock in Medicate Pharmacy or payment for my "ownership" share in any entity, including "DeliverMed - Illinois, LLC." No operating agreement for the entity DeliverMed-Illinois, LLC was ever finally signed by Michael Schaltenbrand.

24. On or about September 13, 2009, Swift received a letter from Michael Schlatenbrand terminating him, Swift, from all association with Medicate Pharmacy, Inc. Since that date, Swift has received no compensation from Medicate Pharmacy, Inc.

25. Following that termination, Swift filed a claim with the Illinois Department of Labor for unpaid wages based upon my agreement with Michael L. Schaltenbrand. A separate federal court complaint was filed on Swift's behalf under the federal Fair Labor Standards Act ("FLSA") for the unpaid compensation due to Swift.

26. In October 2009, Michael L. Schaltenbrand, agreed that Medicate Pharmacy, Inc. owed Swift unpaid commission, salary and expenses.

27. Those funds as identified by Michael L. Schaltenbrand as being owed by Medicate Pharmacy, Inc. to Swift, have never been paid to Swift by Medicate Pharmacy, Inc.

28. In 2000, Swift applied for Trademark status for the name DeliverMed. Swift reapplied for the name for his corporation in 2003. That Trademark was granted on May 4, 2008. See, Exhibit B, attached.

29. On May 1, 2008, Swift applied for Trademark status for the tagline, "Right at Home." See, Exhibit C, attached.

30. On November 10, 2009, DeliverMed Holdings, LLC applied for Trademark status of the DeliverMed logo, a copy of which is attached as Exhibit D.

31. After Swift was terminated by Medicate Pharmacy, Inc., counsel for DeliverMed sent a "cease and desist letter" to Medicate Pharmacy, Inc. dated November 4, 2009, demanding that Medicate Pharmacy, Inc. stop using the name, the tag line and the logo of DeliverMed. A copy of that letter is attached as Exhibit E.

32. No response to the November 4, 2009, "cease and desist" letter was ever sent by Medicate Pharmacy, Inc.

33. DeliverMed has recently resumed soliciting patients and has referred those patients to other pharmacies since September 13, 2009.

34. DeliverMed has received numerous complaints from patients it had previously referred to Medicate Pharmacy, Inc. about late or no delivery of medications, medication errors or other errors.

35. DeliverMed has referred certain of those complaining patients to other pharmacies.

36. Neither DeliverMed nor Swift has received any compensation for any patients referred to other pharmacies who had been serviced by Medicate Pharmacy, Inc. In addition, neither Swift nor DeliverMed Holdings, LLC has any economic interest in any of the pharmacies to which DeliverMed has referred patients since September, 2009.

37. Attached as Exhibit F is a card which shows the DeliverMed logo and name which were recently used by Joe D. Siddle, an employee of Medicate Pharmacy, Inc. The card with Mr. Siddle's name, lists him as "Chief Operating Officer, DeliverMed Holdings, LLC, Medicate Pharmacy." Mr. Siddle has never been an officer of DeliverMed Holdings LLC. This business card was provided to a provider of services to Medicate Pharmacy, Inc.

38. Exhibit G is a card that is enclosed with every prescription sent to customers of Medicate Pharmacy, Inc.

39. The address on Mr. Siddle's card, 1833 Kingshighway, Washington Park, IL 62204, is the address for one of the two pharmacy locations operated by Medicate Pharmacy, Inc.

40. Within the past week, Swift has received notification of a webpage for Medicate Pharmacy, Inc., which is attached as Exhibit H.

41. That webpage, Exhibit H, uses the DeliverMed logo but not the DeliverMed name.

42. The web page makes the following accusation:

"IMPORTANT NOTICE: DELIVERMED ILLEGALLY OBTAINED A LIST OF OUR PATIENTS"

43. The webpage notice also states:

"Please be aware that DeliverMed, a marketing company is illegally using a copy of a list of our customers and phone numbers. They are trying to solicit your service (sic) by spreading false rumors about Medicate Pharmacy."

44. During the time that Swift worked with Medicate Pharmacy, Inc., he never had access to the computer system of that firm. All information from the Medicate Pharmacy system was sent to Swift in the ordinary course of business by Medicate Pharmacy.

45. DeliverMed has never taken any lists of patients from Medicate Pharmacy, Inc. DeliverMed has provided the list of mail order patients to Medicate Pharmacy during the time period 2005-2009. There is no contract or other agreement which prohibits DeliverMed from referring patients it has solicited to any other pharmacy.

46. The entry on webpage is signed "Michael L. Schaltenbrand, R.Ph., President, Medicate Pharmacy, Inc."

47. Swift was advised of this web page notice by representatives of various State of Illinois agencies with whom Swift worked on a regular basis.

48. Swift has been advised of this notice by other industry participants with whom he had worked.

49. These accusations of DeliverMed illegally obtaining the patient list are totally false. DeliverMed obtained these names by soliciting patients using various means of data searches. Those names were provided by DeliverMed to Medicate Pharmacy. As set forth above, Swift has never received the 35% value in the combined business as promised by Michael L. Schaltenbrand.

50. The false accusations against DeliverMed are causing continuing harm to the business which cannot be measured.

## COUNT I

**COMMON LAW SERVICE MARK INFRINGEMENT AND UNFAIR COMPETITION**

51. Plaintiff specifically realleges and reincorporates by reference Paragraphs 1 through 50 of this Complaint as though they were restated here in full.

52. Subsequent to the adoption and use by Plaintiff of the Mark, Defendants unlawfully adopted and began using the Mark, or approximations or simulations thereof, in commerce in connection with its operations.

53. Defendants' use as set forth above is likely to cause confusion, mistake and deception among consumers as to the source of Defendant's services.

54. Defendants are currently using the Mark, or approximations or simulations thereof, willfully and with full knowledge of Plaintiffs prior use of and rights to the Mark.

55. Defendants' acts have been and are being committed with the intent and purpose of misappropriating the goodwill, prestige and business reputation of Plaintiff as represented by the Mark. Defendants have, therefore, deceived and are continuing to deceive the consuming public.

56. The unauthorized use of the Mark by Defendants has caused and will continue to cause irreparable harm to Plaintiff. In particular, this infringement has caused and is continuing to cause irreparable injury to the trade, business reputation, prestige and goodwill Plaintiff has developed in the Mark.

57. As a direct and proximate result of Defendants' violation of Plaintiffs service mark rights and unfair competition, Plaintiff has also been damaged by the loss of customers and has been required to incur attorneys' fees and costs to protect its rights. Further, Defendants have wrongfully benefited from its continued unauthorized use of the Mark, or approximations or simulations thereof, and has realized profits they would not otherwise have obtained.

## COUNT II

### FEDERAL UNFAIR COMPETITION

58. Plaintiff specifically realleges and reincorporates by reference Paragraphs 1 through 50 of this Complaint as though they were restated here in full.

59. This Count arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) for federal unfair competition in the forn1 of the false designation, description, and representation of services as to their nature and origin.

60. Without Plaintiffs' authorization, Defendants have used and continues to use the Mark, or approximations or simulations thereof, in commerce as a designation of the nature and origin of its services.

61. In adopting and using the Mark, or approximations or simulations thereof, Defendants have falsely designated, described, and represented the nature and origin of its services in violation of Section 43(a) of the Lanham Act. Defendants' use of such Mark, or approximations or simulations thereof, is likely to cause confusion, mistake, and deception among consumers.

62. The acts of Defendants have been and are being committed with the intent and purpose of misappropriating Plaintiffs goodwill and the goodwill represented by the Mark and are, therefore, fraudulently and willfully deceiving the public.

63. The deliberate and unauthorized use of the Mark, or approximations or simulations thereof, by Defendants, has caused and will continue to cause irreparable harm to Plaintiffs trade, business reputation, prestige, and goodwill. The wrongful use of the Mark, or approximations or simulations thereof, by Defendants has also caused Plaintiff to lose customers and to incur attorneys' fees and costs to protect its rights. Further, Defendants have wrongfully benefited from its continued unauthorized use of the Mark and has realized profits it would not otherwise have obtained.

64. Defendants are now committing the acts alleged herein. Plaintiff has no adequate remedy at law, and unless Defendants are enjoined from continuing its wrongful acts, Plaintiff will continue to be immediately and irreparably harmed.

## COUNT III

### VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

65. Plaintiff specifically realleges and reincorporates by reference Paragraphs 1 though 50 of this Complaint as though they were restated here in full.

66. The Illinois Uniform Deceptive Trade Practices Act, 815 ILCS *510/1, et. seq.,* provides that a person engages in deceptive trade practices when, *inter alia,* he "(1) passes off goods or services as those of another; (2) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another; ... [or] (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities

that they do not have ... ,If regardless of whether or not is competition between the parties or actual confusion or misunderstanding. 815 ILCS 510/2.

67. Defendants' unauthorized use of the Mark, or approximations or simulations thereof, trades on the business reputation and good will of Plaintiff with the intention of deceiving the public into believing that Defendant is affiliated, connected or associated with Plaintiff in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1-7.

68. By its actions, as described above, Defendants willfully engaged in deceptive trade practices.

69. As a direct and proximate result of the deceptive trade practices of Defendants, Plaintiff has suffered and will continue to suffer damage in an amount not yet fully determined, including the expenditure of attorneys' fees and court costs.

70. Defendants are now committing the acts alleged herein. Plaintiff has no adequate remedy at law, and unless Defendants are enjoined from continuing its wrongful acts, Plaintiff will continue to be immediately and irreparably harmed.

## COUNT IV

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES

71. Plaintiff specifically realleges and reincorporates by reference Paragraphs I through 50 of this Complaint as though they were restated here in full.

72. The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq.,* makes "the use or employment of any deception, fraud, false pretense, false promise,

misrepresentation or the concealment, suppression or omission of any material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' ... in the conduct of any trade or commerce" unlawful, regardless of whether "any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

73. Defendants' continuing unauthorized use of the Mark, or approximations or simulations thereof, so as to mislead and deceive the public by suggesting an association, connection or affiliation of Defendants with Plaintiff is an unfair method of competition and a deceptive act or practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-12.

74. By their actions, as described above, Defendants willfully engaged in an unfair method of competition and a deceptive act or practice.

75. As a direct and proximate result of the deceptive practices of Defendants, Plaintiff has suffered, and will continue to suffer serious damage in an amount not yet fully determined, including the expenditure of attorney's fees and court costs.  In addition, the wrongful use of the Mark, or approximations or simulations thereof, by Defendants have also caused Plaintiff to lose customers and to incur attorneys' fees and costs to protect its rights.  Further, Defendants have wrongfully benefited from Defenadnts' continued unauthorized use of the Mark and has realized profits they would not otherwise have obtained.

## COUNT V

## DILUTION

76.     Plaintiff specifically realleges and reincorporates by reference paragraphs 1 through 50 of this Complaint as though they were restated here in full.

77.     Defendants' continuing unauthorized use of the Mark in promoting its operations is a violation of the Illinois Anti-Dilution Law, 765 ILCS 1036/1, *et seq.* (1998), and the common law of Illinois in that it diminishes the public association of the Mark with Plaintiff and works an inexorably adverse effect upon the distinctiveness of the Mark by diluting the quality of such marks and by creating a likelihood of injury to Plaintiffs respected reputation.

78.     The wrongful acts of Defendants have caused and continue to cause injury to Plaintiff in a manner that cannot be accurately computed. Unless this Court restrains Defendant from further commission of such unlawful acts, the distinctive quality of the Mark will suffer dilution and Plaintiff will continue to suffer substantial irreparable harm to its business reputation and goodwill for which it has no adequate remedy at law.

79.     In addition, as a direct and proximate result of the willful and wrongful conduct of Defendants, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT VI

## BUSINESS DEFAMATION

80.     Plaintiff restates and realleges paragraphs 1 through 50 as if fully incorporated herein.

81. Defendants' false, deceptive and misleading statements are defamatory per se and damaging to Plaintiff.

82. Such commercial conduct on the part of Defendants amounts to willful business defamation under Illinois common law and for which Plaintiff is entitled to actual and/or compensatory damages and injunctive relief.

83. Defendants' actions and misrepresentations have caused, and continue to cause damages to Plaintiff, in an amount to be determined at trial. Defendants' actions and misrepresentations have caused irreparable injury to Plaintiff, and unless and until Defendants' continuing actions and misrepresentations are enjoined by this Court, Plaintiff will continue to suffer irreparable injury because of Defendants' actions and misrepresentations. Plaintiff has no adequate remedy at law.

## COUNT VII
### COMMERCIAL DISPARAGAMENT

84. Plaintiff restates and realleges paragraphs 1 through 50 as if fully incorporated here.

85. Such commercial conduct on the part of Defendants, amounts to willful trade disparagement under Illinois common law and for which Plaintiff is entitled to damages and injunctive relief.

## COUNT VIII

## PRELIMINARY INJUNCTIVE RELIEF

86. Plaintiff specifically realleges and reincorporates by reference paragraphs 1through 50 of this Complaint as though they were restated here in full.

87. The injunctive relief sought herein is necessary to protect Plaintiff, and the public, from substantial and irreparable harm it has sustained and will continue to sustain if Defendants are permitted to continue its unauthorized use of the Mark. Plaintiff has no adequate remedy at law for this infringing conduct.

88. The irreparable harm Plaintiff will suffer in the absence of injunctive relief outweighs any harm Defendants will suffer if the injunction is granted.

89. Plaintiff has a reasonable likelihood of prevailing on the merits of this case at trial.

90. The injunction will not harm the public interest. Instead, an injunction is in the public's best interest.

## JURY DEMAND

Plaintiff demands trial by a jury of twelve in this matter.

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendants and issue an order:

a. granting a preliminary injunction during the pendency of this action and, after a final hearing on the merits, a permanent injunction, enjoining Defendants and their agents, servants,

employees, and all others in active concert with them, either directly or indirectly, from using the Mark, or approximations or simulations thereof such as DELIVERMED;

b. granting a preliminary injunction during the pendency of this action and, after a final hearing on the merits, a permanent injunction, enjoining Defendants and their agents, servants, employees, and all others in active concert with them, either directly or indirectly, from damaging, destroying, concealing, disposing of, or using any materials bearing DELIVERMED, including the tagline "Right at Home" and the DeliverMed logo, which is confusingly similar to Plaintiff's Mark;

c. granting a preliminary injunction during the pendency of this action and, after a final hearing on the merits, a permanent injunction, enjoining Defendants and their agents, servants, employees, and all others in active concert with them, either directly or indirectly, from otherwise infringing upon the service marks, trade names, or any intellectual property rights belonging to Plaintiff or otherwise competing unfairly with Plaintiff, such that Plaintiff further prays:

   (i) for judgment that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

   (ii) for judgment that Defendants have engaged in consumer fraud and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1, *et seq.*;

   (iii) for judgment that Defendants have engaged in deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 505/1, *et. seq.*;

   (iv) for judgment that Defendants have engaged in dilution under the Illinois Anti-Dilution Law, 765 1LCS 1036/1, *et seq.*, and common law of the State of Illinois;

(v) for judgment that Defendants have engaged in service mark infringement under the common law of the State of Illinois; and

(vi) for judgment that Defendants have engaged in unfair competition in violation of the common law of the State of Illinois;

(vii) for judgment that Defendants have made false and defamatory statements about Plaintiff;

(viii) for judgment that Defendants have committed business defamation by making false and misleading statements about Plaintiff;

(ix) for judgment that Defendants have committed trade disparagement by making false and misleading statements about Plaintiff;

d. ordering Defendants to amend its tradename consistent with the foregoing; e. pern1anently enjoin Defendants from making or publishing false, misleading and defamatory statements about Plaintiff;

e. permanently enjoin Defendants from making or publishing false, misleading and defamatory statements about Plaintiff;

f. granting Plaintiff other compensatory and punitive damages in an amount to be determined at trial;

g. entering a finding that this case is exceptional within the meaning of the Lanham Act;

h. granting Plaintiff costs and attorneys' fees; and

i. granting Plaintiff such other and further relief as this Court deems just and proper.

Date:  March 24, 2010                                    DeliverMed Holdings, LLC

<u>By: s/James A. McGurk</u>

One of Plaintiff's Attorney


James A. McGurk
Law Offices of James A. McGurk, P.C.
10 South LaSalle Street
Suite 3300
Chicago, Illinois 60603
(312) 236-8900
(312) 277-3497 (fax)

20100324.VerifiedComplaint.delivermed.doc

## **CERTIFICATE OF SERVICE**

I, James A. McGurk, an attorney, certify that on Wednesday, March 24, 2010, I caused a copy of the foregoing to be served upon the following individuals the ECF filing system, by facsimile, and Federal Express:

**Via Fax (618) 234-9786**
**and Federal Express**

Kevin J. Stine, Esq.
Kevin Richter, Esq.
Mathis, Marifian, Richter & Grandy
23 Public Square
Suite 300
Belleville, Illinois 62220

**Via Fax (618) 394-7423**
**and Federal Express**

Lawrence E. Schaltenbrand
Register Agent for Medicate Pharmacy, Inc.
7400 West Main Street
Belleville, Illinois 62223

By: /s/James A. McGurk
One of Plaintiff's Attorneys