UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELIVERMED HOLDINGS, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10-cv-1874 |
| MEDICATE PHARMACY, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR STAY AND ALTERNATIVE MOTION FOR TRANSFER**

**I. INTRODUCTION**

Mark Swift and his company, DeliverMed Holdings, LLC ("DeliverMed"), continue their forum shopping and barrage of baseless litigation against Swift's former employer, Medicate Pharmacy, Inc. ("Medicate"), its owner, Michael Schaltenbrand, and now its chief operating officer, Joe Siddle, with this fourth lawsuit. Here, DeliverMed alleges that defendants engaged in unfair competition in violation of the Lanham Act and Illinois law by using its "Mark." DeliverMed's complaint puts the parties' business relationship, and particularly ownership of the phrase "DeliverMed" following failed partnership negotiations, at issue.[1] A trademark ownership dispute, however, does not give rise to federal jurisdiction. DeliverMed similarly fails to state a claim under the Lanham Act. Because this case (like *Swift v. Medicate Pharmacy, Inc.,* 10-CV-689) arises out of the former business relationship, it is cumulative of litigation in St. Clair County, Illinois and should also be dismissed for forum non conveniens, stayed under the *Colorado River* doctrine, or, in the alternative, transferred to the Southern District of Illinois.

---

[1] DeliverMed's substantive allegations refer only to the "Mark," defined in the preface of the Complaint as the term "DeliverMed." Defendants therefore move to dismiss and strike any claims or allegations relating to the phrase "Right at Home" and the alleged "DeliverMed logo" pursuant to Rules 12(b)(6) and 12(f), including the references in paragraphs b and c of the prayer for relief. DeliverMed has not alleged any facts to support the relief requested.

1

## II. FACTUAL BACKGROUND

This is the fourth case regarding Swift and DeliverMed's former business relationship with Medicate, Schaltenbrand and now, Siddle. DeliverMed admits that this case and its companion (*Swift v. Medicate Pharmacy, Inc.*, 10-CV-689) "arise out of the same relationship" between the parties. Motion to Transfer (Doc. 11), ¶3. That relationship allegedly began with DeliverMed's agreement to solicit pharmacy patients for Medicate in exchange for 40% of the profit on each patient's prescriptions being paid to Swift. Complaint, ¶¶13-14. Swift and DeliverMed contend the parties later negotiated a second agreement merging the two companies and reducing Swift's commission but giving him an ownership interest in the combined entity, DeliverMed Medicate Pharmacy. *Id.*, ¶¶16-17. According to Swift and DeliverMed, DeliverMed agreed to transfer the Mark "**to Medicate Pharmacy, Inc.** for use by the new entity." *Id.*, ¶21 (emphasis added). Schaltenbrand purportedly terminated the parties' relationship in September, 2009. *Id.*, ¶¶20, 25.

Since then, Swift and/or DeliverMed have filed three legal proceedings against Schaltenbrand and/or Medicate. First, on November 4, 2009, Swift filed a wage claim against Medicate with the Illinois Department of Labor, Fair Labor Standards Division, captioned *Mark A. Swift v. Medicate Pharmacy, Inc.*, Wage Claim No. 09-5706. *See* Exhibit 1, attached. Swift alleges that Medicate owes him $130,156.32 in "back wages and commissions," $656,047.60 in back commissions (with interest) and $25,488.39 for unauthorized deductions. *Id.* at Claim Application.

On November 10, 2009, Medicate filed suit in the Circuit Court for St. Clair County, Illinois against Swift and DeliverMed, captioned *Medicate Pharmacy, Inc. v. Mark A. Swift and Delivermed Holdings, LLC,* Case No. 09-MR-296. *See* Exhibit 2, Complaint, attached. Medicate seeks damages for Swift and DeliverMed's tortious interference as well as a declaratory judgment regarding Swift's contention that he is entitled to an ownership or partnership interest in Medicate. *See generally, id.*

Adjudication of these proceedings is well underway. *See* Schaltenbrand Aff. (Ex. 3), ¶¶___. Swift and DeliverMed have answered the complaint in St. Clair County and Medicate has answered two rounds of discovery, including 98 requests for admission. *Id.*, ¶___. Swift and DeliverMed recently noticed and took the depositions of non-party witnesses. *Id.* Swift is actively pursuing his wage claim with the Department of Labor. A hearing is anticipated in July. *Id.*, ¶___.

On February 3, 2010, three months after filing his wage claim, Swift filed a third case in six counts, *Swift v. Medicate Pharmacy, Inc., et al.*, 10-CV-689. That case is currently pending before the Court. In Counts I through III, Swift purports to assert claims under the Fair Labor Standards Act for lost salary. *See* Complaint (Doc. 1), ¶¶5, 11-16. In Count IV, he purports to assert a claim under the Illinois Minimum Wage Law, again to recover salary. *Id.*, ¶¶6, 17-19. In Count V, he purports to assert a claim under the Illinois Wage Payment and Collection Act for unpaid commissions. *Id.*, ¶¶7, 17-21. Finally, in Count VI, he seeks damages for the alleged failure to provide an ownership interest in Medicate on theories like fraud and breach of contract. *Id.*, ¶¶8, 17-21.

On March 24, 2010, DeliverMed brought this fourth suit in eight counts. It purports to assert claims for infringement and unfair competition (Count I), "federal unfair competition" (Count II), violations of the Illinois Deceptive Trade Practices Act, Consumer Fraud and Deceptive Business Practices Act and Anti-Dilution Law (Counts III-V), business defamation/commercial disparagement (Counts VI and VII) and preliminary injunctive relief (Count VIII). DeliverMed concedes that this case and *Swift v. Medicate Pharmacy, Inc.* "arise out of the same relationship" and concern the same "critical agreements" and "occurrences." *See* Motion to Transfer (Doc. 11), ¶¶3-4, 7.

## II. ARGUMENT

DeliverMed's complaint must be dismissed for lack of subject matter jurisdiction. DeliverMed's allegation that federal question, supplemental and trademark jurisdiction exists turns on ownership of the Mark and the validity of its purported claim for "unfair competition in

the form of the false designation, description and representation of services as to their nature and origin" under the Lanham Act (Count II). Because DeliverMed does not have a valid Lanham Act claim, this case should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Subject matter jurisdiction is also lacking under the forum non conveniens and *Colorado River* doctrines, which provide independent bases for dismissal or stay of this case.

However, should this Court find that jurisdiction is proper, Defendants move to transfer this case to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §1404(a), as venue is proper and transfer would further convenience and justice.

A. **The Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction.**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action where, as here, it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). The court may look beyond the allegations of the complaint in determining whether subject matter jurisdiction exists. *Id.*; *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). The burden of proving subject matter jurisdiction is on the plaintiff. *United Phosphorus*, 322 F.3d at 946. Because DeliverMed is not entitled to relief on its sole federal claim (Count II), and under the forum non conveniens and *Colorado River* doctrines, subject matter jurisdiction is lacking and this case must be dismissed.

(1) DeliverMed Alleges (at Most) a Dispute Concerning Ownership of the Mark, which Does Not Support Federal Jurisdiction as a Matter of Law.

DeliverMed alleges (at most) a dispute concerning ownership of the Mark following the alleged partnership/merger negotiations that does not support federal jurisdiction. Federal courts have concurrent jurisdiction over claims that "arise under" the Lanham Act. *See* 28 U.S.C. §1338(a) (providing jurisdiction over claims "arising under any Act of Congress relating to . . . trademarks"). However, a claim does not "arise under" the Lanham Act merely because the

4

property at issue is a trademark. *E.g., Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 618-19 (4th Cir. 1997). To sustain jurisdiction, a violation of the Act must be alleged. *Id.* (affirming dismissal because what is essentially a contract dispute over ownership between joint venturers does not become a federal concern just because the property is a trademark); *see also Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194 (7th Cir. 1987) ("state courts are competent to resolve disputes likely to be dominated by ordinary contract principles . . . even though the subject of the dispute is a right created by federal law").

Although DeliverMed makes some attempt to couch its claim in the unfair competition protections of the Lanham Act, it has not alleged a violation of the Act. The Act provides that "[a]ny person who, on or in connection with any goods or services, . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion . . . shall be liable in a civil action." 15 U.S.C. §1125(a)(1). To state a claim for unfair competition, DeliverMed must allege (1) that it is the rightful owner of a protectable trademark; and (2) that Defendants' use of the Mark is likely to confuse consumers. *E.g., Munters Corp. v. Matsui America, Inc.*, 909 F.2d 250, 252 (7th Cir. 1990); *TMT North America, Inc. v. Magic Touch*, 124 F.3d 876, 882 (7th Cir. 1997) (false designation of origin claim exists only when there is an alternate, true origin, which turns on "whether someone has used a word or symbol to refer (at least in the eyes of the law) only to that person's goods").

### a. *DeliverMed and Swift Are Judicially Estopped from Claiming Ownership.*

As a threshold matter, DeliverMed and Swift are judicially estopped from claiming ownership of the Mark and, therefore cannot proceed under the Lanham Act. DeliverMed, according to its own pleadings, is a single member LLC owned by Swift. *See* Motion to Transfer

5

(Doc. 11), ¶1. Swift is essentially the alter ego of DeliverMed. *E.g.*, Complaint, ¶¶13, 15 (payments for DeliverMed services made or to be made to Swift). In September 2005, Swift filed a personal bankruptcy, *In Re Swift*, Case No. 05-35255, in the United States Bankruptcy Court for the Northern District of Illinois. *See* Voluntary Petition, attached as Exhibit 4. Although Swift alleges that he formed DeliverMed and entered into an initial agreement with Medicate in 2005, Swift's interest in DeliverMed is reflected nowhere on his bankruptcy schedules and statement of financial affairs (particularly, item 18 on business interests). *See* Voluntary Petition (Ex. 4).[2] Swift's failure to disclose his interest in DeliverMed (and any related assets) judicially estops him from claiming ownership of any DeliverMed assets here and provides a separate and independent basis for the dismissal of Count II. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("a debtor in bankruptcy who denies owning an asset . . . cannot realize on that concealed asset after the bankruptcy ends.").

     b. *DeliverMed Fails to State a Claim Upon Which Relief May Be Granted.*

In addition, DeliverMed has not adequately alleged either element of a Lanham Act claim. DeliverMed alleges that Medicate is or should be the current owner of the Mark because "as part of the agreement to merge businesses, DeliverMed was to transfer the name DeliverMed. . . to Medicate Pharmacy, Inc." *See* Complaint, ¶21. DeliverMed also claims promotional materials for the new entity, DeliverMed Medicate Pharmacy, were prepared. *Id.*, ¶17. DeliverMed cannot seek to affirm the alleged merger/partnership agreement where convenient in its wage claims and disaffirm it here. Based on its own pleading, DeliverMed, at a minimum, permitted Medicate's use of the Mark. Because DeliverMed did not use the Mark "to refer . . . only to [its] goods," it lacks ownership. *Magic Touch*, 124 F.3d at 882.

---

[2] Secretary of State records indicate that Swift formed DeliverMed on February 1, 2005, seven months prior to filing for bankruptcy. *See* LLC File Detail Report, attached as Exhibit 5.

DeliverMed also fails to allege the second prong of a Lanham Act claim—that the defendants are using the Mark in a manner that is likely to confuse consumers. To establish this element, DeliverMed must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable . . ." *Aschroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The grounds for liability require more than labels and conclusions; a formulaic recitation of the elements will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). DeliverMed makes at most two non-conclusory allegations regarding use of the Mark. In paragraph 37, it alleges that Joe Siddle "recently" gave a "provider of services to Medicate" a business card that identified him as the COO of "DeliverMed Holdings, LLC, Medicate Pharmacy." This does not support a Lanham Act claim because does not establish use of the Mark with consumers. Rather, it suggests that the parties' dispute really concerns breach the alleged partnership agreement.

Paragraph 39 alleges that a card enclosed with "every prescription sent to customers of Medicate Pharmacy, Inc." reads "Thank You for Using Medicate Pharmacy DeliverMed." *See* Complaint, ¶38, Exhibit G. This "use" is also consistent with the purported partnership negotiations (as well as transfer of the Mark to Medicate) and no facts suggest a likelihood of confusion.

Lastly, DeliverMed has failed to allege that any Defendant caused any good to travel in interstate commerce. *See generally*, Complaint. This provides a separate and independent basis for dismissing Count II. *Illinois Tool Works, Inc. v. Chester Bros. Machined Products, Inc.*, 2006 WL 2192981, at *3-4 (N.D. Ill.).

    c. *DeliverMed Has Not Alleged Facts Giving Rise to Personal Liability.*

Any Lanham Act claim asserted against Schaltenbrand and Siddle personally fails for the separate and independent reason that any actions that Schaltenbrand and Siddle allegedly took

with regard to the Mark occurred in their capacities as officers of Medicate. *See* Complaint, ¶¶3-4, 8, 37; Schaltenbrand Aff. (Ex. 3), ¶¶6, 7; Siddle Aff. (Ex. 6), ¶¶6, 11. The law is clear that corporate officers are not liable for Lanham Act violations when they act within the scope of their duties. *E.g., Furstperson, Inc. v. Iscopia Software, Inc.*, 2009 WL 2949777, at *4 (N.D. Ill.) (granting motion to dismiss and citing cases); *Specht v. Google, Inc.*, 660 F.Supp2d 858, 864-65 (N.D. Ill. 2009) (same). DeliverMed does not allege *facts* demonstrating that Schaltenbrand and Siddle were "motivated by some improper purpose" or "acting outside the scope of their corporate duties" sufficient to satisfy the "special showing" for personal liability. *Id.* DeliverMed's allegations concern the "Defendants" as a collective, and they make clear that Schaltenbrand and Siddle's involvement, if any, occurred purely in their corporate capacities. *E.g.,* Complaint, ¶¶60 ("Defendants have used and continues to use the Mark, or approximations or simulations thereof, in commerce as a designation or the nature and origin of its services"), 61, 63 ("Defendants have wrongfully benefitted from its continued unauthorized use of the Mark and has realized profits it would not otherwise have. . ."). DeliverMed fails to state a Lanham Act claim against the individuals.

In short, DeliverMed has failed to allege facts that "allow[] the court to draw the reasonable inference that [any] defendant is liable . . ." under the Lanham Act. *See generally, Aschroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). At most, this case presents an ordinary dispute concerning the alleged breach of a purported partnership agreement that belongs in state court. Count II for alleged violations of the Lanham Act must be dismissed for failure to state a claim.

(2) <u>This Action Should Be Dismissed for Lack of Subject Matter Jurisdiction.</u>

Because DeliverMed fails to state a claim against any defendant under the Lanham Act, there is no federal subject matter jurisdiction under §§1331 and1338. This Court should decline

to exercise supplemental jurisdiction and dismiss the case in its entirety. *See* 28 U.S.C. §1367(c)(3); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994) ("the general rule is that, when all federal law claims are dismissed before trial," pendent claims should be left for the state court); *Dovenmuehle v. Gilldorn Mtg. Midwest Corp.*, 871 F.2d 697, 699, n.2 (7th Cir. 1989) (affirming dismissal of state law claims following dismissal of Lanham Act claims).

**B. The Case Should Be Dismissed for Forum Non Conveniens or Stayed Under the Colorado River Doctrine.**

Should the Court find DeliverMed has stated a claim for relief, this action should be dismissed for forum non conveniens or stayed under the *Colorado River* doctrine. These doctrines exist to protect litigants from precisely the circumstances present here: vexatious, expensive and inconvenient litigation concerning the same issues before multiple decision makers.

(1) <u>This Action Should Be Dismissed for Forum Non Conveniens</u>[3]

The forum non conveniens doctrine enables the Court to dismiss a case where, as here, making the defendant defend in that court rather than an alternative forum would burden the defendant unreasonably. *Sinocem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). It applies when: (1) an adequate alternative forum is available; and (2) the litigants' private interests and the public's interests weigh in favor of transfer. *In re Bridgestone/ Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005). "Dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *U.S.O. Corp. v. Muzuho Holding Co.*, 547 F.3d 749, 749-50 (7th Cir. 2008).

The St. Clair County Circuit Court is unquestionably an available, adequate alternative forum. The court is clearly available to the parties, as Swift, DeliverMed and Medicate are presently

---

[3] Regarding the state law claims, Defendants also move for dismissal pursuant to 735 ILCS 5/2-619(a)(3), which provides for dismissal when another action is pending between the parties for the same cause.

litigating similar issues there. It is adequate because there is no risk that the parties will be deprived of any remedy sought in this case or treated unfairly. *Bridgestone/Firestone*, 420 F.3d at 704. All but one of DeliverMed's claims is brought under Illinois state law. Only its alleged Lanham Act claim arises under federal law. However, Lanham Act claims are within the concurrent jurisdiction of state courts and (to the extent that the Lanham Act affords any distinct remedy), DeliverMed can obtain precisely the same relief it seeks here in St. Clair County. *See* 28 U.S.C. §1338(a) (providing exclusive federal jurisdiction to copyright, patent and plant claims, but not including trademarks); Wright & Miller, Fed. Prac. & Proc., Juris. §3582 (3d ed.) ("it is clear that jurisdiction is concurrent between federal and state courts in cases arising under federal law relating to trademarks").

The public and private interest factors also weigh heavily in favor of dismissal. The private interest factors include: relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; and any other practical issues that make trial of a case more efficient and more economical. *Bridgestone/Firestone*, 420 F.3d at 704. Public interest factors include: administrative difficulties from court congestion; local interests in having localized disputes decided at home; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

If Plaintiff were to litigate this case in St. Clair County, the parties, their witnesses and the judicial system would all be saved significant amounts of time and resources. At present, the parties are adjudicating the existence and terms of the alleged partnership/merger as well as Swift's compensation arrangement before the Illinois Department of Labor, the St. Clair County Circuit Court and this Court. DeliverMed concedes that the claims alleged here arise out of the same occurrences and "critical agreements" at issue in Swift's federal case, which are also essentially the same issues raised in the St. Clair County and Illinois Department of Labor cases. *See* Memorandum in Support of Defendants' Motion to Dismiss (Doc. 13), Case No. 10-CV-0689.

Rather than requiring the parties, their counsel and witnesses and the decision makers to hear this dispute multiple times, it could be heard once in a way that would fully, fairly, and finally resolve all issues. Absent that, the parties are likely to incur additional expenditures of time and money adjudicating the finality and preclusive effect of various judgments and findings. These considerations are of fundamental importance and weigh heavily in favor of dismissal. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (courts should consider whether the pending action would "vex," "harass" or "oppress" the defendant by inflicting on him burden or expense not necessary to plaintiff's right to pursue his remedy); *U.S.O. Corp. v. Muzuho Holding Co.*, 547 F.3d 749, 750, 755 (7th Cir. 2008) (affirming dismissal in favor of earlier filed litigation and noting that "[t]here is no reason for identical suits to be proceeding in different courts . . . Such parallel proceedings incite a race to judgment in the hope that judgment in the home forum will favor the home litigant and be usable to block the other suit by interposing a defense of res judicata").

(2) This Action Should Be Stayed Under the Colorado River Doctrine

If it is not dismissed, this action should be stayed under the *Colorado River* doctrine, which enables federal courts to stay or dismiss an action where there is a concurrent state proceeding and a stay would promote wise judicial administration.[4] *Colorado River Water Conversation Distr. v. United States*, 424 U.S. 800, 817 (1976). The doctrine applies where the actions are parallel and the balance of factors supports a stay. *Ingalls v. AES Corp.*, 2008 WL 896196, at *2 (7th Cir.).

The St. Clair County litigation is unquestionably a parallel proceeding to this case. In both cases, "substantially the same parties are contemporaneously litigating substantially the same issues" in different forums and there is a substantial likelihood that the state court litigation will dispose of the federal litigation. *Id.* at 3. Both suits raise similar issues, including the terms of DeliverMed and Swift's relationship with Medicate (and/or Schaltenbrand), any promises of partnership or ownership,

---

[4] Although the doctrine permits courts to stay or dismiss litigation, the Seventh Circuit prefers a stay. *See, e.g., Lumen Constr., Inc. v. Brant Contrs. Co.*, 780 F.2d 691, 698 (7th Cir. 1985).

and whether that arrangement was satisfied. *See* Complaint (Ex. 2); Complaint. DeliverMed can raise its claims as counterclaims in St. Clair County and both suits will be resolved with substantially the same evidence. DeliverMed admits it agreed to transfer assets, including its alleged trademarks, to Medicate as part of the alleged merger and that this case and its prior federal case arise from the same occurrences and agreements. *See* Complaint, ¶¶21-22; Motion to Transfer (Doc. 11).

The balance of pertinent factors weighs heavily in favor of a stay. Courts generally consider: (1) state jurisdiction over a res; (2) inconvenience of the federal forum; (3) desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) source of the governing law; (6) adequacy of state court to protect plaintiff's rights; (7) relative progress of the proceedings; (8) presence of absence of concurrent jurisdiction; and (10) vexatious or contrived nature of the claim. *Tyrer v. City of South Beloit, Illinois*, 456 F.3d 744, 754 (7th Cir. 2006). While the first factor is inapplicable, the other factors weigh strongly in favor of a stay. The St. Clair County litigation began several months before this case and it is more than adequate to protect DeliverMed's rights. Seven of DeliverMed's eight claims arise under Illinois state law. The St. Clair County Circuit Court has concurrent jurisdiction over DeliverMed's remaining Lanham Act claim, which can be fully and fairly adjudicated in state court. *See* 28 U.S.C. §1338(a). The St. Clair County proceeding has advanced through written discovery and depositions have begun. *See* Schaltenbrand Aff. (Ex. 3), ¶19. Litigating this matter in state court (with or without the pending Department of Labor Claim)[5] would prevent piecemeal litigation and greatly reduce the burden on the parties, witnesses and the courts by resolving the pertinent issues one time in one forum. *LaDuke v. Burlington Northern R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989) (piecemeal litigation occurs when different tribunals consider the same issue; it is "unseemly" and a "grand waste" of efforts).[6] As

---

[5] It is also appropriate to consider the pending administrative proceeding in evaluating a stay. *Wrzesinski v. Martwick*, 1989 WL 122302 (N.D. Ill.) (staying federal case pending administrative decision).

[6] Additional discussion regarding inconvenience can be found in the next section of this memorandum.

courts in analogous cases recognize, a stay is warranted under these circumstances. *Tyrer v. City of South Beloit, Illinois*, 456 F.3d 744, 756 (7th Cir. 2006) (granting stay where "allowing the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward strategic gamesmanship"); *Rosen v. Com Dev, Inc.*, 1990 WL 93336, at *1-2 (N.D. Ill.) (staying federal breach of employment contract case in favor of state court declaratory judgment action).

### C. Alternatively, this Action Should Be Transferred to the Southern District of Illinois.

Should the Court conclude that Plaintiff has stated claims and that dismissal or stay of this action is improper, then this action should be transferred to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §1404(a). Under §1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." Transfer is proper if (1) venue is proper and it is for the convenience of the parties or witnesses and in the interests of justice. *E.g., St. Paul Fire and Marine Ins. Co. v. Franklin Bank*, 2006 WL 3197727, at *1 (N.D. Ill).

Here, venue is proper in the United States District Court for the Southern District of Illinois. That Court embraces the judicial district where defendants Schaltenbrand, Siddle and Medicate reside, and it is located where a substantial part of the events giving rise to DeliverMed's claims occurred. *See* 28 U.S.C. §1391(b), (c). Schaltenbrand and Siddle are St. Clair County, Illinois residents, who never did business within the Northern District of Illinois in their personal capacities. *See* Schaltenbrand Aff. (Ex. 3), ¶¶1, 5; Siddle Aff. (Ex. 6), ¶¶1, 5. Medicate is an Illinois corporation with its principal place of business and only offices in St. Clair County, Illinois. Schaltenbrand Aff. (Ex. 3), ¶¶6, 10. A substantial part of the events at issue occurred in the Southern District of Illinois. *Id.*, ¶¶7-16; Siddle Aff. (Ex. 6), ¶¶11-14. As such, the Southern District of Illinois is a proper venue.

In addition, transferring this case to the Southern District would greatly convenience the parties and their witnesses. In assessing convenience, it is proper to consider: (1) the plaintiff's choice of forum, (2) the situs of material events; (3) ease of access to evidence; (4) convenience of

the witnesses; and (5) convenience of the parties. *St. Paul Fire and Marine Ins. Co.*, 2006 WL 3197727, at *1 (N.D. Ill). These factors clearly weigh in favor of transfer.

Although DeliverMed filed suit in Northern Illinois, its preference is not determinative. *Id.* This dispute is about ownership of the Mark, particularly relating to the alleged partnership/merger negotiations. As previously described, the material events occurred in the Southern District of Illinois. Essentially none of the events that form the basis of DeliverMed's claims occurred in the Northern District of Illinois and its choice of forum should not be afforded deference. *Id.* at *2.

In addition, it would be more burdensome and expensive for Medicate, Schaltenbrand, and Siddle to litigate in Northern Illinois than for Plaintiff to litigate in Southern Illinois not only because Schaltenbrand and Siddle reside in Southern Illinois, but also because documentary evidence regarding the logo, communications with patients, and negotiations with Swift and DeliverMed is located in the Southern District of Illinois. *See* Schaltenbrand Aff. (Ex. 3), ¶¶4, 11, 21; Siddle Aff. (Ex. 6), ¶¶4, 15. Swift and DeliverMed, on the other hand, chose to work for Medicate knowing that Medicate was located in Southern Illinois and Swift regularly traveled to Southern Illinois during his employment. *Id.*, ¶13. DeliverMed is also defending litigation in the St. Clair County Circuit Court and could either file the instant claims in that suit or coordinate his schedule to minimize his travel.

The convenience of witnesses and the interests of justice strongly favor transfer. Defendants anticipate calling several non-party witnesses, including patients, to testify to the absence of unfair competition and defamation. *Id.*, ¶14; Schaltenbrand Aff. (Ex. 3), ¶16. These witnesses are located in Southern Illinois. *Id.* It does not appear that DeliverMed has any Northern Illinois witnesses, other than Swift. Convenience of witnesses is often the most important factor and where, as here, the alternative forum better serves that interest, transfer is proper. *St. Paul Fire and Marine Ins., supra.*

Lastly, transfer to the Southern District of Illinois furthers the interests of justice. While both courts are capable of resolving the claims, it is desirable to litigate in the Southern District because the events giving rise to the disputes at issue took place there and residents could serve as jurors.

*McCants v. C.H. Robinson Worldwide, Inc.*, 2007 WL 1650103, at *3 (N.D. Ill.) (transferring). In addition, transfer furthers §1404(a)'s purposes of preventing a "waste of time, energy and money, as well as protecting the public against inconvenience and expense." *Eugene v. McDonald's Corp.*, 1996 WL 411444, at *1 (N.D. Ill.) (transferring).

## IV. CONCLUSION

DeliverMed and Swift's efforts to make the resolution of disputes concerning the alleged failed partnership/merger unnecessarily expensive and burdensome continue with this fourth case. Like its predecessors, it lacks merit. DeliverMed does not have a valid claim under the Lanham Act and federal jurisdiction is not proper. This case should not be litigated in four parts.

**TENNEY & BENTLEY, LLC**

By  /s/ David R. Shannon
David R. Shannon
111 W. Washington St., Suite 1900
Chicago, IL 60602
(312) 407-7800
(312) 807-4858 (Facsimile)
dshannon@tenbenlaw.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on April 21, 2010, the foregoing was served via facsimile and filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following :

James A. McGurk
10 S. LaSalle Street, Suite 3300
Chicago, IL 60603
Attorney for Plaintiffs

 /s/ David R. Shannon