UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELIVERMED HOLDINGS, LLC, WILLIAM R. DEETER ASSOCIATES, INC., and LINDA DEETER, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL L SCHALTENBRAND, JOEY D. SIDDLE and MEDICATE PHARMACY, INC., <br><br> Defendants. | Case No. 10-cv-684-JPG-DGW <br><br><br> consolidated with |
| MARK A SWIFT, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL L SCHALTENBRAND, JOEY D. SIDDLE and MEDICATE PHARMACY, INC., <br><br> Defendants. | Case No 10-cv-685-JPG-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motions for attorney's fees filed by plaintiff Mark Swift (Doc. 290) and defendants Michael L Schaltenbrand, Joey D. Siddle and Medicate Pharmacy, Inc. ("Medicate") (Doc. 292). Swift is entitled to fees from Medicate for his partial victory on Count IX, a claim under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* In Count IX, the Court found Medicate failed to timely pay Swift a bonus in the amount of $50,333 which it should have paid upon his termination as an employee of Medicate on September 1, 2009, and that Swift was entitled to an additional damage award of $21,139.86, for a total award of $71,472.86, plus reasonable attorney's fees.

On the other side, the defendants are entitled to fees from DeliverMed Holdings LLC

("DeliverMed") on a number of Counts:  (1) pursuant to 17 U.S.C. § 505 for (a) their victory on Count I, DeliverMed's claim for copyright infringement based on the "house and pestle" logo[1] and (2) pursuant to 15 U.S.C. § 1117(a) for (a) their partial victory on Count II, DeliverMed's claim for trademark and service mark infringement based on the "Right at Home" tagline and the logo; (b) their partial victory on Count III, DeliverMed's claim for unfair competition based on use of the tagline and logo; and (c) for their victory on Counterclaim 2, a claim to cancel DeliverMed's trademark registration on the logo.

The parties have responded to the respective motions (Docs. 295 & 296).

## I.     Method of Calculating Attorney's Fees

Both parties agree that the proper method for calculating the awardable fees is the lodestar method, which involves "multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The party seeking a fee award bears the burden of establishing the reasonableness of the hours worked as well as the hourly rate, and where the documentary support is inadequate, the Court may reduce the award.  *See Hensley*, 461 U.S. at 433, 437.  A reasonable hourly rate is presumed to be an attorney's actual billing rate for comparable work.  *Mathur*, 317 F.3d at 743.  Indeed, "the best evidence of the market value of legal services is what people will pay for it."  *Stark v.*

---

[1]The Court's concluding summary of its rulings in its October 15, 2012, order (Doc. 287) and in the judgment (Doc. 288) inadvertently omitted an award of attorney's fees to the defendants for their success in resisting Count I.  However, that fee award was clear from the body of the order, and is therefore no surprise to the parties.  The omission from the concluding summary and from the judgment was an oversight that will be corrected pursuant to Federal Rule of Civil Procedure 60(a) by entry of the Judgment of Attorney's Fees following this order.

*PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004).  As for hours reasonably expended, a fee award should not include hours that are excessive, redundant or otherwise unnecessary or that were incurred in unrelated, unsuccessful claims.  *Hensley*, 461 U.S. at 434-35.  Fees that would not be billed to a paying client will not be shifted to the opposing party in a fee award.  *Id.*

Once the Court arrives at the lodestar amount, it can then adjust the total amount based on various factors specific to the litigation, including:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 645 (7th Cir. 1995).  The results obtained is generally the most important factor, especially where a plaintiff only succeeds on some of his claims.  *Hensley*, 461 U.S. at 434, 436.  In such a case, the Court should not adapt a mathematical approach to comparing claims won and lost but should take a broader view of the significance of the result obtained.  *Id.* at 435, n.11.

The Court reviews the fee petitions in light of this overarching framework.

## II.     Swift's Motion for Fees

Swift asks the Court to award him $827,814.00 in attorney's fees and $36,559.88 in expenses for a total award of $864,373.88 for his partial success in winning a $71,472.86 judgment on Count IX, an IWPCA claim, one of seven claims he brought in *Swift v. Medicate Pharmacy, Inc.*, No. 10-cv-685-JPG-DGW ("Swift Action").[2]  Swift's attorneys represent that

---

[2] Swift also had partial success in Count VII, a breach of contract claim alleging the same unpaid wages at issue in Count IX, but that victory did not include an award of

3

they have omitted all charges that can be identified as specifically relating to Counts I through V (the counts alleged in the consolidated case of *DeliverMed Holdings, LLC v. Medicate Pharmacy, Inc.*, No. 10-cv-684 ("DeliverMed Action")). Swift acknowledges that the Court may reduce his lodestar amount based on his limited success but argues that the Court should also adjust the final amount upward because he was able to extract key admissions from Schaltenbrand during the trial.

The defendants do not challenge the reasonableness of the hourly rates charged by Swift's counsel, but they do challenge the reasonableness of the number of hours (2,972.69) for which Swift seeks reimbursement, arguing that the hours are not adequately justified by Swift's documentation, reflect overlapping work unnecessarily done by multiple lawyers and work done on matters unrelated to Count IX (such as, for example, similar state court litigation and the DeliverMed Action). They further argue that the lodestar should be significantly reduced because the discrete issue on which Swift succeeded was essentially uncontested or should be eliminated because the fee award is grossly excessive. Finally, they object that some of the costs sought are not reimbursable under 28 U.S.C. § 1920.

The Court is tempted to deny Swift any substantial fee award altogether because his request is grossly excessive and an abuse of process. *Budget Rent-A-Car System, Inc. v. Consolidated Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005), allows the Court to deny a fee in such situations. Here, Swift prevailed on his claim that Medicate promised him a bonus when it hired him in January 2008 and never fully paid him that bonus. Medicate did not seriously dispute any of this at trial, and the Court ordered payment of the remainder of the bonus plus

---

attorney fees.

interest at the rate specified in the IWPCA – a total award of $71,472.86.  This was not a difficult claim.  In the Court's opinion, the question of what wages Medicate promised Swift in his employment agreement could have been pled in a few pages and tried in a day with two or three witnesses.  Indeed, on the morning of the first day of trial, Schaltenbrand, Medicate's president, agreed that Medicate had agreed to pay Swift a salary of $1,000 per week and promised him "sort of like a bonus" (Tr. 93:11) when he first became employed by Medicate in 2008.  A few seconds later, Schaltenbrand testified, "I don't believe all of [the bonus] was paid" (Tr. 93:25).  Schaltenbrand then testified, "All of [the salary has] been paid up til whenever he sent a letter saying he wanted to stop or get out of the business or sell the business" in September 2009 (Tr. 94:16-21).  Swift did not disagree on any of these points.  The scope of Swift's attorney fee request is staggering in light of the simplicity of the claim.

     Swift's documentation further supports a lack of sufficient care in excising charges that had nothing to do with his IWPCA claim and did not benefit it in any way.  His attorneys claim to have removed all charges that can be identified as specifically relating to the DeliverMed Action (Counts I through V) and not the Swift Action, but that is not the relevant dividing line.  Swift's award should not simply exclude all charges that can be proved unnecessary to his entire case.  On the contrary, it should include only charges that contributed to his success on Count IX in particular.  Swift bears the burden of showing that charges in a gray area – for example, block billings that include some tasks that should be counted and some that should not, or time in trial where relevant and irrelevant witnesses testified – actually benefitted Count IX.  If they did not, it is his responsibility to pare a reasonable portion of those charges from his request.  On numerous occasions, he has not done this.  For example, Swift's fee petition requests reimbursement for full days of trial on days where a substantial portion of the evidence presented

did not pertain to wages he was due under his employment agreement. It also includes general charges such as, for example, for trial preparation or conferences, that may or may not have included work that benefitted Swift's IWPCA claim. The result is a bloated fee request.

However, rather than deny Swift an attorney's fee altogether, the Court will reduce the fee to reflect the percentage of the Swift Action which, in its judgment and experience in this litigation, was relevant to pursuit of Swift's IWPCA claim: 10%. It further finds a 70% reduction of that amount to be appropriate in light of the limited success Swift obtained in his IWPCA claim. This yields a total fee award to Swift in the amount of $25,931.22, to be paid by Medicate.[3]

The Court acknowledges that Swift's pleading also alleged "commissions" were due under his employment agreement. The evidence at trial, however, established that these "commissions" were, in fact, distributions under a joint venture agreement that was separate from Swift's employment agreement and were not wages at all. Swift himself equated "commissions" with the percentage of profits due under the joint venture agreement (*See, e.g.,* Tr. 1358:20-21; 1637:12-13; 1876:7-8; 1995:13-24; 2042:25-2043:4; Def. Ex. 75, ¶ 12; Def. Ex. 76, ¶ 6). Swift's claim that they were wages due under his employment agreement was frivolous. However, if the Court considers Swift's IWPCA claim to include a claim for "commissions" as wages, the Court would reach the same result with respect to the fee petition, finding that he has established that 60% of the charges in his fee petition benefitted the IWPCA claim (including the claim for "commissions") but that that lodestar figure should be reduced by

---

[3] To the extent Medicate complains some expenses are not recoverable as costs, they are recoverable as expenses included in the attorney's fee award and have been reduced based on the percentages as described.

95% because of Swift's limited success on that expansive IWPCA claim, still yielding a total award of $25,931.22.

### III.   Defendants' Motion for Fees

The defendants ask the Court to award them $158,691.25 in attorney's fees and $4,210.15 in expenses for a total of $162,901.40.  They represent that they have only included in their request charges that are specifically connected to the copyright and trademark claims on which they prevailed and do not include general discovery, trial preparation or charges specifically associated with their efforts to cancel the "DeliverMed" trademark.  The defendants further assert that the hours their counsel worked on this case were reasonable in light of DeliverMed's conduct in the litigation, including multiple lengthy pleadings and shifting theories, and that they ultimately prevailed on all the claims in the DeliverMed action.  Counsel note that substantially all of the fees they request have actually been paid by the defendants prior to the Court's judgment in this case.

DeliverMed does not challenge the reasonableness of the hourly rates or the hours expended.  Instead, it suggests the Court should reduce the fees requested by the defendants because Schaltenbrand also wrongfully obtained a copyright in the "house and pestle" logo and because Swift, who is not a party to the DeliverMed Action, obtained favorable factual findings in the Swift Action.

The Court has reviewed the defendants' motion for fees and the documentation submitted in support of it and finds that the hourly rates are reasonable.  They are lower than those of DeliverMed's counsel as requested in the Swift Action.  It further finds that the hours expended in defense of Counts I, II, and III and in prosecuting Counterclaims 1 and 2 are reasonable. Counsel has attested that they have removed charges that were excessive, redundant or otherwise

7

unnecessary to litigating the aforementioned claims.

The Court further finds no adjustment to the lodestar is warranted.  DeliverMed was completely successful on all of its claims for which the Court has determined it is entitled to attorney's fees, and none of the other factors weigh in favor of reducing the fee award.  Swift's success in obtaining favorable factual findings related to the Swift Action is not relevant to a fee award based on the defendants' success in obtaining favorable judgments in the DeliverMed Action.  Accordingly, the Court awards the defendants attorney's fees in the amount of $162,901.40.

**IV.    Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** Swift's motion for attorney's fees (Doc. 290);

- **AWARDS** Swift attorney's fees in the amount of $25,931.22 to be paid by Medicate;

- **GRANTS** the defendants' motion for attorney's fees (Doc. 292);

- **AWARDS** the defendants attorney's fees in the amount of $162,901.40 to be paid by DeliverMed; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  November 29, 2012**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
